# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 17, 2023        Decided January 2, 2024

No. 22-1205

CITY OF LINCOLN, D/B/A LINCOLN ELECTRIC SYSTEM,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

SOUTHWEST POWER POOL, INC., ET AL.,
INTERVENORS

———

On Petition for Review of Orders
of the Federal Energy Regulatory Commission

———

*Debra D. Roby* argued the cause for petitioner. With her on the briefs were *Alan I. Robbins* and *Thomas B. Steiger III.*

*Matthew J. Binette* and *Elizabeth P. Trinkle* were on the briefs for intervenor for petitioner Southwest Power Pool, Inc.

*Robert M. Kennedy*, Senior Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Matthew R. Christiansen*, General Counsel, and *Robert H. Solomon*, Solicitor.

2

*Sean R. Janda*, Attorney, U.S. Department of Justice, argued the cause for intervenor for respondent Western Area Power Administration. With him on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Melissa N. Patterson*, Attorney.

*Jesse Halpern*, *Rebecca L. Shelton*, and *Jecoliah R. Williams* were on the brief for intervenor for respondent Basin Electric Power Cooperative.

Before: HENDERSON and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON

KAREN LECRAFT HENDERSON, *Circuit Judge*: Petitioner City of Lincoln d/b/a Lincoln Electric (Lincoln) is a public utility providing electricity to the Lincoln, Nebraska area. Despite serving electric load to Lincoln area customers only, Lincoln long ago invested in the Laramie River Station facilities (LRS) in eastern Wyoming as a source of generation and transmission. Lincoln joined the Southwest Power Pool (SPP) in 2009, giving the SPP control of all its facilities in the Lincoln area (Zone 16). Lincoln began recovering its costs from customers in SPP's Zone 16. Lincoln did not give the SPP control of its interest in the LRS facilities, however, and continued recovering these costs through electricity rates charged to its Zone 16 customers. In 2021, the SPP proposed that Lincoln recover its LRS costs from Zone 19 customers, where LRS is physically located. Other co-owners of the LRS facilities recover their costs from Zone 19 customers. But Basin Electric Power Cooperative (Basin Electric) and other Zone 19 transmission providers protested the proposal because the SPP does not control Lincoln's LRS interest and the proposal would illegitimately shift costs to Zone 19 customers. The Federal

Energy Regulatory Commission (FERC or the Commission) rejected the SPP proposal as unjust and unreasonable; because Zone 19 customers neither caused Lincoln's LRS investment nor benefit from it, FERC concluded, the SPP's proposal violates the cost-causation principle.

Lincoln petitions for review of the relevant FERC orders and the SPP (together with Lincoln, Petitioners) intervenes on Lincoln's behalf. Respondent FERC defends the orders, as do Intervenors Basin Electric and Western Area Power Administration (WAPA). As discussed *infra*, FERC reasonably concluded that Lincoln failed to show the proposed rates are just and reasonable. Accordingly, we deny the petition for review.

## I.  BACKGROUND

### A.  LRS Facilities and Southwest Power Pool

The Federal Power Act (FPA), 16 U.S.C. §§ 791–828c, gives FERC exclusive jurisdiction over all facilities for transmission of electric energy in interstate commerce. 16 U.S.C. § 824(b). Public utilities must file transmission rates and charges with the Commission and demonstrate that the rates and charges are "just and reasonable." *Id.* § 824d(a), (c), (e).

Electric utilities historically formed vertically integrated monopolies covering large geographic areas. *See Morgan Stanley Cap. Grp., Inc. v. Pub. Util. Dist. No. 1*, 554 U.S. 527, 535 (2008). Technological advances at the end of the twentieth century lowered the cost of long-distance transmission and FERC responded by promoting "open access" in the electricity market. *Id.* at 535–36. Under FERC Order No. 888, each transmission provider must offer service to all customers on an equal basis by posting an "open access transmission tariff." *Id.*

at 536 (quotation omitted); *see Promoting Wholesale Competition Through Open Access Nondiscriminatory Transmission Services by Public Utilities*, 61 Fed. Reg. 21540 (May 10, 1996) (Order No. 888). FERC then encouraged transmission providers across the country to establish individual Regional Transmission Organizations (RTOs): nonprofit entities that operate transmission facilities on behalf of transmission providers to ensure efficient coordination across multi-state regions. *Morgan Stanley*, 554 U.S. at 536; *Regional Transmission Organizations*, 65 Fed. Reg. 810, 811–12 (Jan. 6, 2000) (Order No. 2000). FERC also encouraged the creation of non-profit, nondiscriminatory Independent System Operators (ISOs) to operate RTOs. *Morgan Stanley*, 554 U.S. at 536–37.

In 2004, FERC authorized the SPP to form a RTO providing electric transmission services across a multi-state region in the central United States.[1] *See Neb. Pub. Power Dist. (NPPD) v. FERC*, 957 F.3d 932, 935 (8th Cir. 2020). The SPP uses a "license-plate" rate design that charges customers located in a specific zone rates based on the cost of the transmission facilities located in that zone.[2] *Id.* Within a multi-member zone, the SPP totals the cost of service (costs)—

---

[1] Following a major 2015 expansion, the SPP now covers portions of fourteen states: Arkansas, Iowa, Kansas, Louisiana, Minnesota, Missouri, Montana, Nebraska, New Mexico, North Dakota, Oklahoma, South Dakota, Texas and Wyoming. *Electric Power Markets: Southwest Power Pool*, FEDERAL ENERGY REGULATORY COMMISSION, https://perma.cc/PG4B-2DBX (last visited Dec. 20, 2023).

[2] FERC has also considered an alternative "postage stamp" rate design that would total the transmission costs of all facilities throughout the RTO and allocate those costs to all customers therein. *See, e.g.*, *PJM Interconnection, LLC*, Opinion No. 494, 119 FERC ¶ 61063 at P 2 n.2 (2007).

including operating costs and profit—of all transmission providers and then divides it among all customers taking load in the zone.[3] *Sw. Power Pool, Inc.* (April Order), 179 FERC ¶ 61045 at P 2 (2022). If the SPP expands its geographic footprint, it establishes new rate zones for larger transmission providers and places smaller providers into existing zones. *NPPD*, 957 F.3d at 935. Placing a transmission provider into an existing zone results in a new rate for the zone's existing customers. *Id.* A transmission provider must "transfer functional control" of transmission facilities to the SPP to take full advantage of SPP membership according to § 3.0(a) of the SPP Membership Agreement.[4]

Long before the RTO/open-access regime, Lincoln invested in a 12.76% interest in the LRS facilities.[5] The LRS facilities were constructed in the 1980s in eastern Wyoming and four transmission providers currently co-own them: Lincoln Electric, Basin Electric, Missouri River Energy Services (Missouri River) and Tri-State Generation and Transmission Association (Tri-State). April Order, P 4. Lincoln invested in LRS "as a reliable source of capacity and energy needed to serve load"—load entirely located in Lincoln, Nebraska at the time of its investment and to this day. J.A. 538; *see* April Order, P 33. Before the RTO/open-access regime, Lincoln delivered LRS power to the Nebraska Public Power District's (NPPD's) transmission system, which then

---

[3] *See Formula Rates in Electric Transmission Proceedings: Key Concepts and How to Participate*, FEDERAL ENERGY REGULATORY COMMISSION, https://perma.cc/K5GP-YYUE (last visited Dec. 20, 2023).

[4] *See SPP Documents: Current Bylaws and Membership Agreement Tariff*, SOUTHWEST POWER POOL (Nov. 10, 2014), at *99, https://perma.cc/S7C3-SC55.

[5] Lincoln now has around a 10% interest in LRS, having sold 2.28% interest to other parties. J.A. 537.

transmitted electricity across Nebraska to Lincoln's Zone 16 facilities and customers.

Lincoln joined the SPP as a transmission provider in 2009, transferring functional control of all facilities in the Lincoln, Nebraska area to the SPP. *Id.* P 5. The SPP in turn created a new Zone 16 covering Lincoln's service area and Lincoln began recovering costs from Zone 16 customers according to the SPP Tariff. *Id.* The SPP did not extend to eastern Wyoming at that time and so Lincoln continued to deliver LRS electricity to the SPP border and then use the SPP network to deliver power to Zone 16.

The SPP underwent a major expansion in 2015 and created a new multi-member Zone 19 that encompasses the LRS facilities' physical location. *Id.* P 6. Basin Electric, which operated and maintained the LRS facilities on behalf of the other co-owners, joined the SPP in 2015 together with other local transmission providers, including the WAPA. *Id.*; *Sw. Power Pool Inc.*, 149 FERC ¶ 61113 (2014). Basin Electric transferred functional control of its transmission facilities to the SPP and began recovering its costs through rates charged to Zone 19 customers. April Order, P 6. Missouri River joined the SPP shortly after Basin Electric, also transferred functional control to the SPP and began recovering its costs through Zone 19 rates. *Id.*; *Sw. Power Pool, Inc.*, 152 FERC ¶ 61247 (2015). The final LRS co-owner, Tri-State, applied to join the SPP in 2015 and the SPP placed Tri-State into neighboring Zone 17 for cost recovery purposes. *NPPD*, 957 F.3d at 934, 936. Tri-State does not recover its costs from Zone 19. April Order, P 6. Lincoln continues to recover its costs from Zone 16 customers only. April Order, P 33.

## B.   Lincoln's Proposal

In 2021, the SPP filed a tariff revision on Lincoln's behalf that would allow Lincoln to recover its LRS costs from Zone 19 customers. As part of the proposal, Lincoln offered to transfer functional control of its 10.46% interest in the LRS facilities to the SPP. April Order, P 22. Basin Electric and WAPA—which both recover their costs from Zone 19 customers—protested Lincoln's proposal. They alleged that Lincoln's recovery from Zone 19 customers would present an inappropriate cost shift because Zone 19 customers do not benefit from, and the SPP has no functional control over, Lincoln's LRS interest. *Id.* P 15. The SPP responded that it has had functional control of all LRS facilities since Basin Electric transferred control to it in 2015 because no co-owner owns any discrete physical portion of the "jointly owned" facilities. J.A. 451; *see* April Order, P 17.

The Commission concluded that Petitioners failed to satisfy their burden to demonstrate the proposal is just and reasonable. April Order, P 32; *see* 16 U.S.C. § 824d(e). The FPA's "just and reasonable" standard incorporates a "cost-causation principle." *Old Dominion Electric Coop. v. FERC*, 898 F.3d 1254, 1255 (D.C. Cir. 2018). All approved rates must "reflect to some degree the costs actually caused by the customer who must pay them." *K N Energy Inc., v. FERC*, 968 F.2d 1295, 1300 (D.C. Cir. 1992). The Commission classified Lincoln's LRS interest as a "legacy facility," *see* April Order, P 33, meaning a facility developed by individual utilities to "benefit their own systems and their own customers." *PJM Interconnection, L.L.C.*, Opinion No. 494, 119 FERC ¶ 61063 at P 42, *aff'd*, *Ill. Com. Comm'n v. FERC*, 576 F.3d 470, 474 (7th Cir. 2009). Because Lincoln invested in LRS for Zone 16 customers only, allocating Lincoln's LRS costs to Zone 19 would violate the cost-causation principle by imposing costs on

customers who do not benefit from Lincoln's LRS investment. April Order, P 33. Although the SPP has a formal zonal placement process for new facilities, FERC declined to apply that process because Lincoln had not newly joined the SPP. *Id.* P 31. It also disagreed with Lincoln's interpretation of FERC precedent. *Id.* PP 34–38. Finally, FERC rejected Lincoln's undue discrimination claim because Lincoln is not similarly situated to Basin Electric and Missouri River—LRS co-owners that do serve load in Zone 19, recover their costs from Zone 19 customers and have transferred functional control of their LRS interests to the SPP. *Id.* P 39.

Lincoln timely filed a request for rehearing. Because FERC failed to act within 30 days, the request was deemed denied in June 2022. 16 U.S.C. § 825*l*(a); 18 C.F.R. § 385.713(f); *see Sw. Power Pool, Inc.*, 179 FERC ¶ 62147 (2022) (citing *Allegheny Def. Project v. FERC*, 964 F.3d 1 (D.C. Cir. 2020) (en banc)). In September 2022, FERC issued an order "modifying the discussion" of the April order and reached the same result. *Sw. Power Pool, Inc.* (Sept. Order), 180 FERC ¶ 61211 at P 2 & n.5 (2022). The Commission retained its classification of Lincoln's LRS interest as a legacy facility and rejected Lincoln's interpretation of its precedent. *Id.* PP 27, 32–36.

Lincoln timely petitioned our Court for review of the two FERC orders and the SPP intervened in support of Lincoln. We have jurisdiction of the petitions pursuant to section 313(b) of the FPA. 16 U.S.C. § 825*l*(b).

## II.   ANALYSIS

Applying the Administrative Procedure Act, we "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

We need not find "whether a regulatory decision is the best one possible or even whether it is better than the alternatives." *FERC v. Elec. Power Supply Ass'n*, 577 U.S. 260, 292 (2016). Instead, we uphold FERC's action so long as it examined relevant considerations and articulated a reasoned explanation for it. *Id.* "[N]owhere is that more true than in a technical area like electricity rate design: '[W]e afford great deference to the Commission in its rate decisions.'" *Id.* (quoting *Morgan Stanley*, 554 U.S. at 532 (first alteration added)). Rate design often involves policy judgments at the core of FERC's regulatory function. *Md. Pub. Serv. Comm'n v. FERC*, 632 F.3d 1283, 1286 (D.C. Cir. 2011) (per curiam). We accept FERC's factual findings if supported by substantial evidence. 16 U.S.C. § 825*l*(b). We also defer to FERC's interpretation of its precedent and, if it departs therefrom, we nevertheless defer so long as FERC provides a reasoned explanation for the departure. *Mo. Pub. Serv. Comm'n v. FERC*, 783 F.3d 310, 316 (D.C. Cir. 2015).

Petitioners contend that FERC (A) misapplied the cost-causation principle; (B) ignored the importance placed on physical location in FERC precedent; and (C) unduly discriminated against Lincoln when compared to fellow LRS co-owners. We disagree.

## A.  Cost-Causation Principle

As noted earlier, the FPA's just and reasonable standard incorporates the cost-causation principle. *Old Dominion Electric Coop.*, 898 F.3d at 1255. FERC-approved rates must "reflect to some degree the costs actually caused by the customer who must pay them." *K N Energy, Inc.*, 968 F.2d at 1300. Petitioners claim that Lincoln's LRS interest in fact serves Zone 19 customers, the SPP has functional control of Lincoln's LRS ownership interest and Zone 19 customers will

benefit from the extra capacity provided by Lincoln's LRS interest. FERC reasonably rejected each of these claims under the cost-causation principle.

First, Petitioners failed to provide evidence that Lincoln in fact serves Zone 19 customers. Lincoln explained that it invested in LRS "as a reliable source of capacity and energy needed to serve load" in the Lincoln, Nebraska area, that is, Zone 16, and FERC found no evidence of any other purpose for Lincoln's investment. J.A. 538; Sept. Order, P 28. It also concluded that the 300-mile distance between the LRS facilities and Lincoln's Zone 16 load does not change Lincoln's investment purpose: serving its existing customers. Sept. Order, P 28. Petitioners argue that the initial purpose of investment should not control because Lincoln has now joined the SPP and sources electricity from the SPP's network service. But Lincoln still has a pre-open access "grandfathered agreement" with NPPD to transmit electricity from LRS to its Zone 16 facilities without using SPP network service.[6] *Id.* P 29; *see Sw. Power Pool, Inc.*, 160 FERC ¶ 61115 at P 3 (2017). FERC reasonably concluded that Lincoln does not serve Zone 19 customers but can continue to transmit electricity from LRS directly to its Zone 16 customers.

Petitioners also failed to show the SPP's functional control of Lincoln's LRS interest. They suggest that the SPP took functional control of the entire LRS facilities when Basin Electric transferred control of its majority LRS interest to the SPP in 2015. FERC inquired about the SPP's functional control of Lincoln's LRS interest and Lincoln responded that it "*will make available* to SPP capacity associated with [its] interest in the LRS Transmission Facilities." J.A. 537 (emphasis added).

---

[6] Lincoln argued to FERC that its proposal would have "no impact on GFA #496," the grandfathered agreement with NPPD. J.A. 545.

FERC rightly concluded that the SPP has not yet taken control of Lincoln's LRS interest. Sept. Order, P 21. Both Missouri River and Tri-State transferred functional control of their LRS interests to the SPP after Basin Electric joined. *See supra* Section I.A. Lincoln has not yet done so.

FERC decided that Lincoln's offer to transfer control of its LRS interest *as part of its proposal* does not alter the cost-causation analysis. Sept. Order, P 30. It explained that it treats Lincoln's LRS interest as a "legacy facility"—essentially a sunk cost, built by individual utilities to serve their own systems and customers—just as it treated existing facilities in the PJM Interconnection region (PJM) in Opinion No. 494.[7] *Id.*; Opinion No. 494, P 50. The Seventh Circuit upheld Opinion No. 494, explaining that "no economic basis" supported shifting the costs of legacy facilities to anyone other than the originally intended customers. *Ill. Com. Comm'n*, 576 F.3d at 474. Thus, even if the SPP takes functional control of Lincoln's LRS interest, the cost-causation principle requires cost allocation "to the customers for whom those facilities were constructed." Opinion 494, P 51. Lincoln invested in the LRS facilities to benefit its Zone 16 customers only. FERC reasonably explained how Lincoln's LRS legacy facility status prevents allocating cost of service recovery to Zone 19, even if the SPP has functional control.

Petitioners claim that Zone 19 customers will benefit from Lincoln's LRS interest because it will provide additional transmission capacity. But the SPP admits that the LRS interests already under its control provide excess transmission capacity to serve Zone 19 customers. J.A. 453–54. If the SPP

---

[7] PJM Interconnection is an RTO that serves the northeast United States. *Electric Power Markets: PJM*, FEDERAL ENERGY REGULATORY COMMISSION, https://perma.cc/BY6W-Z9TG (last visited Dec. 20, 2023).

has access to excess capacity from the LRS facilities already, Lincoln's interest will not provide needed additional capacity, as FERC reasonably concluded: Lincoln's "capacity share is neither used *nor needed* to serve Zone 19 load." April Order, P 38 (emphasis added).

## B.   FERC Precedent

We defer to FERC's reasonable interpretations of its precedent and reject Petitioners' strained reading. They claim that several FERC decisions emphasize the importance of a facility's physical location. But FERC did not depart from these decisions and indeed applied them faithfully. *See Mo. Pub. Serv. Comm'n*, 783 F.3d at 316.

Petitioners criticize FERC's interpretation and application of Opinion No. 494. 119 FERC ¶ 61063. Lincoln interprets a "legacy facility" to require physical proximity to a utility's load center. But Opinion No. 494 does not opine on the physical distance between the transmission facility and its load. *See* Opinion No. 494, P 45 (focusing instead on "who benefits from the facilities"). Lincoln's LRS interest may be an unusual legacy facility because of its distance from Lincoln's Zone 16 customers but the cost-causation principle nonetheless requires FERC to consider "for whom [the facilities] were constructed and whom they continue to serve." *Id.* P 42. As noted *supra*, Lincoln's LRS interest was built for and continues to serve Zone 16 customers.

Petitioners also challenge FERC's application of Opinion No. 494 because the Opinion addressed cost allocation across an entire *region*, instead of the sub-regional zones in play here. The Eighth Circuit recognized this distinction when, in a case involving allocation of costs across sub-regional zones, it considered the SPP's placement of Tri-State into Zone 17. *NPPD*, 957 F.3d at 940–41. Nevertheless, that Circuit found

Tri-State's proposal satisfied *Illinois Commerce*'s cost-causation principle. *Id.* at 941.[8] FERC thus reasonably applied Opinion No. 494's cost-causation principle to Lincoln's proposal here notwithstanding the proposal involves allocating costs across sub-regional zones only.

Lincoln next alleges that FERC's *Allegheny I* and *II* decisions support basing cost allocation on a facility's physical location but Lincoln's cost allocation is significantly distinguishable. In its *Allegheny* orders, FERC considered how to allocate Allegheny's pre-open access investment in a 42-mile transmission line in the PPL Zone of PJM.[9] *PJM Interconnection, L.L.C.*, 94 FERC ¶ 61295, 62074 (2001) (*Allegheny I*); *PJM Interconnection, L.L.C.*, 95 FERC ¶ 61217, 61720 (2001) (*Allegheny II*). Allegheny served only a tiny portion of its load within the PPL Zone. *Allegheny I*, at 62074–75. The transmission line enabled Allegheny to transmit power to its load in another zone but it "primarily support[ed] load within the PPL Group Zone." *Id.* at 62078. If Allegheny had not agreed to pay for the transmission line, PPL—a public utility in the PPL Zone—would have built the same line and recovered its costs from PPL customers. *Id.* FERC reasonably distinguished Lincoln's proposal: no Zone 19 customers use Lincoln's LRS interest but PPL relied on Allegheny's transmission line to serve its customers; Lincoln invested in LRS to serve its own customers but Allegheny invested to partially serve its own load and primarily support PPL's load;

---

[8] This Court has also approved the legacy facility cost-allocation principle described in Opinion No. 494 and *Illinois Commerce*. *See State Corp. Comm'n v. FERC*, 876 F.3d 332, 334 (D.C. Cir. 2017).

[9] PPL Electric Utilities Corporation (PPL) is a public utility serving Pennsylvania. *See Allegheny I*, at 62074 & n.1; *About Us*, PPL ELECTRIC UTILITIES, https://perma.cc/G7UY-TA4G (last visited Dec. 20, 2023).

and PPL would have built the same facilities if Allegheny had not but it is unclear that another transmission provider would have invested in Lincoln's LRS interest to serve Zone 19. April Order, P 37; Sept. Order, P 33; *see supra* Section II.A.

FERC's *Westar* decision is also distinguishable. Westar purchased the Spring Creek switchyard transmission facility located in the SPP's Oklahoma Gas & Electric (OG&E) Zone. *Sw. Power Pool, Inc.* (*Westar*), 120 FERC ¶ 61297 at P 4 (2007). OG&E Zone customers already used the Spring Creek facilities and Westar assumed a contractual obligation to continue serving them. *Id.*; April Order, P 35. FERC thus approved Westar's cost recovery from OG&E Zone customers as just and reasonable. *Westar*, P 22. As explained earlier, Zone 19 customers have not used—and have no need to use—Lincoln's LRS interest.

Petitioners also point to FERC's *Rochester* order as upholding a scheme closely analogous to Lincoln's proposal but FERC reasonably distinguished *Rochester*. The Rochester Public Utilities Board (Rochester) invested in a transmission line in Zone 16 of the Midcontinent Independent System Operator RTO (MISO).[10] *MISO, Inc.*, Opinion No. 564, 164 FERC ¶ 61194 at PP 1, 5 (2017) (*Rochester*). Rochester served load in Zone 20 only, not in Zone 16. *See id.* PP 6, 34, 43. Rochester sought to allocate its transmission line costs to Zone 16 and MISO approved. *Id.* PP 1, 136. Petitioners point to *Rochester* as an example of FERC's use of physical location to guide an allocation decision, even if the transmission owner serves no load in the zone. But FERC reached this result only because it interpreted the MISO Tariff to require allocation "to

---

[10] MISO is an RTO that serves the central United States. *Electric Power Markets: MISO*, FEDERAL ENERGY REGULATORY COMMISSION, https://perma.cc/Y55Z-NVLB (last visited Dec. 20, 2023).

the zone in which the facility is physically located." *Id.* P 134. The MISO Tariff described "facilities located in/within that pricing zone" and FERC emphasized that—based on their physical nature—facilities are "fixtures" and "located" must mean "existing in a particular place." *Id.* PP 119–21. FERC reasonably distinguished *Rochester* because the SPP's Tariff has no default provision comparable to the MISO Tariff provision discussed in *Rochester*. April Order, P 34; Sept. Order, P 35. Without a default Tariff provision dictating cost allocation, FERC must apply the just and reasonable standard and its cost-causation principle to the proposed cost allocation.[11] Sept. Order, P 35.

In its briefing, the SPP alleges that a facility's integration with the existing SPP transmission system informs zonal placement and cost recovery. In Opinion No. 562, FERC considered a proposal to allocate Tri-State's costs to Zone 17. *Sw. Power Pool, Inc.*, Opinion No. 562, 163 FERC ¶ 61109 at P 1 (2018), *aff'd*, *NPPD*, 957 F.3d at 938. NPPD, the dominant transmission owner in Zone 17, challenged the resulting rate as unjust and unreasonable. *Id.* FERC applied the SPP's zonal placement process because Tri-State had then only recently joined the SPP. *Id.* PP 1, 32. Because Tri-State built its facilities partly to serve customers in today's Zone 17, Tri-State had a long history of joint planning and use with NPPD and NPPD relied on Tri-State's facilities to serve its load, FERC found Tri-State's proposal just and reasonable. *Id.* PP 192–94, 196. We fail to see how Opinion No. 562 makes FERC's orders here unreasonable. Unlike Opinion No. 562, FERC did not apply the SPP's zonal placement process because Lincoln is not a new SPP member, nor did it purchase an existing facility.

---

[11] Because *Rochester* turned on a default Tariff provision, the just and reasonable ratemaking standard did not apply. *Rochester*, PP 140, 180.

April Order, P 31. Tri-State—through its history of joint planning with NPPD and NPPD's reliance on Tri-State facilities—long benefitted Zone 17 customers. Opinion No. 562, PP 196–97. As explained *supra*, Lincoln's LRS interest has no history of serving or benefitting Zone 19 customers. And Opinion No. 562 found Tri-State's cost allocation, unlike Lincoln's proposal, consistent with Opinion No. 494's cost-causation principle. *Id.* P 197.

## C.  Undue Discrimination

The FPA bars a public utility from giving "any undue preference or advantage to any person" or "maintain[ing] any unreasonable difference in rates, charges, service, facilities, or in any other respect." 16 U.S.C. § 824d(b). But mere differential treatment of two entities does not violate the statute. *Mo. River Energy Servs. v. FERC*, 918 F.3d 954, 958 (D.C. Cir. 2019). Instead, "undue discrimination occurs only if the entities are 'similarly situated,' such that 'there is no reason for the difference.'" *Id.* (first quoting *State Corp. Comm'n*, 876 F.3d at 335 and then *Transmission Access Pol'y Study Grp. v. FERC*, 225 F.3d 667, 721 (D.C. Cir. 2000) (per curiam) (internal citations omitted)). FERC has "wide discretion" to determine what constitutes undue discrimination. *Id.* (quotation omitted). Co-owners of a single facility may be dissimilar under FERC precedent. *See, e.g.*, *Sw. Power Pool, Inc.*, 160 FERC ¶ 61115 at PP 61–62.

We uphold FERC's well-reasoned conclusion that Lincoln is not similarly situated to the LRS co-owners that *do* recover costs from Zone 19: namely, Basin Electric and Missouri River. *See* April Order, P 39; Sept. Order, P 41. The record manifests that Lincoln serves no load in Zone 19, invested in LRS to serve customers in today's Zone 16 and has not transferred functional control to the SPP. Basin Electric has

long served, and continues to serve, load in what is now Zone 19. April Order, P 6. Basin Electric invested in LRS to serve customers in today's Zone 19 and transferred functional control to the SPP in 2015. *Id.* Similarly, Missouri River has served and continues to serve load in Zone 19. *Id.* Missouri River also invested in LRS to serve customers in today's Zone 19 and transferred functional control to the SPP in 2015. *Id.* The record thus demonstrates significant differences between Lincoln and the LRS co-owners who recover costs from Zone 19; accordingly, FERC reasonably determined that Lincoln is not similarly situated to these LRS co-owners and no undue discrimination occurred.

In sum, we deny City of Lincoln's petition for review. Lincoln's proposal violates the cost-causation principle because Lincoln invested in LRS to serve its Zone 16 customers only. That principle does not support Lincoln's recovery of any of its LRS investment from Zone 19 customers, who did not cause Lincoln to incur these costs. FERC reasonably found Lincoln's proposal unjust and unreasonable and it correctly interpreted its precedent and rejected Lincoln's undue discrimination claim.

Accordingly, the City of Lincoln's petition for review is denied.

*So ordered.*